## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MARY CLAIRE MATHEWS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 5190 |
| | ) |
| **COLUMBIA COLLEGE CHICAGO,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action is brought under Title VII of the Civil Rights Act of 1964 by Mary Claire Mathews ("Mathews") against her former employer, Columbia College Chicago ("Columbia"). Ms. Mathews appears pro se. Columbia has moved for summary judgment. For the following reasons, I grant Columbia's motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In this case, taking all facts in the light most favorable to Mathews and drawing all reasonable and justifiable inferences in her favor, the following occurred: Mathews worked for Columbia from 1992 to 2004 as Associate Director and then Director of Grants and Sponsored Programs, both positions that involved soliciting funding from donors for Columbia. Her direct supervisor was the Vice President for Institutional Advancement.[1]

In September of 2002, Mathews' co-worker Jeryl Levin ("Levin") filed an internal complaint alleging that Mathews had used several ethnic slurs about her.[2] Columbia has an Equity Issues Office charged with the investigation of these types of complaints, and that office began an investigation of Levin's complaint. At some point early in the investigation Columbia determined that an employee in the Equity Issues Office had compromised the investigation by discussing it with a co-worker of Levin and Mathews, so Columbia hired an outside attorney to take over the investigation. That attorney attempted to interview Ms. Mathews but was unable to do so. Columbia contended that Mathews refused to cooperate with the investigator, but Mathews testified that she was ambushed by the investigator, not informed of her right to counsel, and was unable to schedule a follow-up interview after

---

[1]That position was held by Dr. Woodie White until he left Columbia in 2003.

[2]Levin is Caucasian, and the alleged slurs related to the fact that she is also Jewish.

2

retaining counsel. Columbia issued a report in December of 2002 suggesting that Mathews be given a written reprimand for violating Columbia's anti-discrimination policy. Mathews was reprimanded, but the president of Columbia issued another letter on April 10 purporting to remove it from her file.

On April 4, 2003, Mathews filed a charge of discrimination against Columbia (the "first EEOC charge") which was processed by the Equal Employment Opportunity Commission (EEOC) via the Illinois Department of Human Rights. Mathews' first EEOC charge alleged that Columbia's investigation of Levin's complaint was conducted in a discriminatory fashion because Mathews "was not informed of [her] rights while non-Black employees who were the subject of discrimination complaints were informed of their rights."[3] A few days later the EEOC sent Mathews a dismissal of the charge and notice of rights letter.[4] Mathews took no action in response to this letter within 90 days of receiving it.

In April of 2003, Mathews' supervisor left Columbia. Columbia hired an outside consulting firm to assess its development operations. As part of its agreement with Columbia, that consulting firm also agreed to manage Mathews' department until a permanent vice-president could be found. An employee of the

[3]Mathews is African-American.

[4]The letter was dated March 8, 2003, but the parties agree that this was a typographical error and that Mathews received the letter in early April of 2003.

3

consulting firm, Valerie Kahn ("Kahn"), took over as the interim
Vice President for Institutional Advancement, a position in which
she oversaw Mathews' department as Mathews' direct supervisor.
Kahn implemented strict office policies addressing attendance, sick
leave, leaving office doors open, and other issues. The employees
under Kahn resented these policies and the way in which Kahn
implemented them, and there was clear interpersonal friction
between her and others in the office, including Mathews.

In May of 2003, Mathews began submitting memoranda to the
Equity Issues Office complaining about Kahn's treatment of her.
She stated in the first memorandum that she believed "these
punitive measures are being taken to retaliate against me for the
legal action I took earlier this year," and in a later memorandum
suggested that "Kahn is working in cooperation with those that
targeted me and is vigorously moving forward an agenda of exclusion
and retaliation."[5] She complained of numerous actions she deemed
"discriminatory and harassing" including that (1) employees who she
formerly supervised were removed from her supervision and placed
under Kahn's supervision; (2) Kahn told other employees that
Mathews only received some of her responsibilities because she was
friends with the former vice-president; (3) she was excluded from
certain meetings and committees; (4) she was held to the new hours

---

[5]Mathews' June 9 memorandum also states that Columbia has
treated her with "extreme prejudice" ever since Levin's complaint
against her in September 2002.

4

and attendance standards when others were not, and (5) Kahn gave her work much closer scrutiny than the work of other employees.

The Equity Issues Office did take some action in response to these allegations, interviewing employees and issuing a memorandum on October 30, 2003.[6] That memorandum mentioned that, upon mentioning Mathews' request for a followup meeting with the Equity Issues Office investigator in October 2003, Columbia's counsel told the investigator she shouldn't be talking to Mathews since "her first case was thrown out." Other than that, the investigator stated that "there was no indication that this office should handle Mathews' complaint any differently than 'as per the Discrimination/Harassment Policy of Columbia College Chicago.'" The investigator did conclude that "there does indeed appear to exist a hostile work environment" in Mathews' department, but the investigator's memorandum did not explicitly conclude that the environment was a result of racial discrimination against Mathews

---

[6]Columbia insists that upon receiving Mathews' memorandum it began interviewing witnesses in May or June of 2003. The memorandum from the Equity Issues Office concerning the results of the investigation about Mathews' complaints does not identify any specific interviews conducted during that time, but does refer to interviews conducted several months later of employees who also made complaints about Kahn. The affidavit Columbia cites for support that it conducted interviews in May and June does not support its contention – that affidavit states that the Equity Issues Office received plaintiff's complaints in May and June 2003, and then "began interviewing employees named by Plaintiff in her complaint as having information." Columbia has presented no specific evidence of any employees it interviewed other than those mentioned in the Equity Issues Office's memorandum.

5

or any other employee, and did not conclude that Kahn had a retaliatory motive against Mathews for her first suit.[7]

On June 30, 2003, Mathews took a three-month leave of absence, returning at the beginning of October 2003. Kahn left Columbia in October or November of 2003.

On July 18, 2003, Mathews filed another charge with the EEOC (the "second EEOC charge"). In the section of the charge where the complainant can mark the basis for the alleged discrimination, Mathews marked only the "retaliation" box. The particulars of the charge described in the charging form stated, in relevant part:

I filed EEOC charge 210A302784 on April 4, 2003. Since filing that charge, my supervisor has subjected me to different terms and conditions than my co-workers in that I have been repeatedly excluded from meetings that pertain to my position; I have been addressed in an unprofessional and disrespectful manner; my four-member staff has been removed from my supervision; I have been harassed about my goal percentage; I've had my laptopp [sic] removed from my possession; I have been asked for copies of my work; and I have been asked to attain an unreasonable amount of donation money for someone in my position. Subsequently, I have had to take a medical leave of absence effective July 1, 2003. While I have been absent my supervisor has requested to view all of my attendance records and has established a new organizational chart. I believe I have been retaliated against. . . .

---

[7]The Equity Issues Office's memorandum does quote another Columbia employee as being told by Kahn that Kahn's "recent behavior toward staff and her management effort was fully sanctioned by the President." These statements are double hearsay, but could potentially be treated as an admission by a party opponent, and therefore admissible under Fed. R. Evid. 801(d). The report itself could be treated as a business record under Rule 803(6) as Columbia's policy required the Equity Issues Office to maintain such memoranda.

6

Columbia employees testified that after Columbia received notice of the second EEOC charge, it stopped its investigation into the issues raised in Mathews' May and June memoranda.

On November 5, 2003, Mathews sent an unsworn letter to the EEOC concerning her second EEOC charge. In that letter, she responded to Columbia's arguments to the EEOC that Kahn could not have retaliated against Mathews because Kahn did not know that Mathews had filed an earlier complaint. Specifically, Mathews stated that because Kahn came to Columbia after Mathews' first EEOC charge, it was clear that Kahn's "actions were directed by information she received from others" and that "the way the College dealt with my complaint [against Kahn] constitutes retaliation." Therefore, Mathews asked the EEOC to "widen the scope of the investigation."

On April 2, 2004, the EEOC sent a letter to Mathews stating that it did not believe Mathews had shown evidence of retaliation because there was no evidence that Kahn knew about Mathews' complaint. Mathews responded on May 10 with a second letter to the EEOC in which she stated that she had been terminated from Columbia and her severance package had been withheld from her until she dropped her current EEOC charge. She also provided further arguments as to how Kahn knew about her first complaint, and how Kahn was retaliating against her. Despite these letters, on May 17, 2004, the EEOC sent her a dismissal and notice of rights letter

7

finding that it could not conclude that Columbia had violated the law. Mathews then brought this lawsuit on August 5, 2004.

Mathews' complaint alleges that Columbia began discriminating against her on September 26, 2002, and references both the first and second EEOC charges as filings she made with the EEOC related to the discrimination alleged in the complaint. She alleges that Columbia failed to stop harassment against her, retaliated against her, and discriminated against her in the terms and conditions of her employment. In the narrative section of her complaint describing what occurred, Mathews contrasts her treatment when she filed a complaint against Kahn with the treatment she received as a subject of Levin's earlier complaint. She alleges both that Kahn "harassed and discriminated against [her]" and that the "[l]ack of action" by Columbia contrasted with her experience having a complaint filed against her.

## II.

An initial question that must be addressed before analyzing the merits of Mathews' complaint is whether she has met the administrative requirements necessary to bring her claims before this court. In order to bring a Title VII claim, a plaintiff must first file an EEOC charge that details the alleged discriminatory conduct, and the EEOC must issue a right-to-sue letter. *See Connor v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (citing *Hentosh v. Herman M. Finch Univ. of Health Scis./The*

*Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). Second, a plaintiff must file suit within 90 days of receiving that right-to-sue letter. 42 U.S.C.A. § 2000e-5(f)(1) (2005). Third, the complaint must be within the scope of the charges filed with the EEOC. *Conner*, 413 F.3d at 680 (citing *Rush*, 966 F.2d at 1110 ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.")). Although a complaint need not be a "replica" of the claim described in the charge, there must be "'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (quoting *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).[8]

Here, Mathews' first EEOC charge alleged that she was discriminated against during the investigation of Levin's charge against her because Columbia did not inform her of her rights while

_____

[8]*See also Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 476-77 (7th Cir. 1999) ("A plaintiff may not bring claims in a lawsuit that were not included in the EEOC charge. This requirement serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute.") (internal citations omitted).

9

"non-Black employees who were the subject of discrimination complaints were informed of their rights." Because Mathews did not file suit on the first EEOC charge within 90 days of receiving her right-to-suit letter, to the extent her complaint alleges discrimination relating to this investigation, those claims are time-barred. *See, e.g.*, *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984) (affirming dismissal of Title VII claim not brought within 90 days of receipt of right-to-sue letter).

Columbia also contends that Mathews' complaint includes many claims that are not within the scope of her second EEOC charge. Mathews' second EEOC charge alleges specific actions that Kahn took that, in Mathews' view, constituted retaliation for her first EEOC charge. Mathews' complaint, however, in addition to recounting those same actions, alleges that Columbia did not address her May and June complaints against Kahn. In her response to Columbia's motion for summary judgement, Mathews argues that, in addition to Kahn's actions, "the 'crux' of her complaint is [Columbia's] failure to timely investigate her internal claim of harassment and retaliation she first raised on May 13, 2003." Nowhere in Mathews' second EEOC charge is there any indication that Mathews believed she was retaliated against by not having her May and June complaints investigated. Merely checking the box "retaliation" on the charge is not enough to include any retaliation claim; the type of retaliation described in the EEOC charge must be the same as

that described in the complaint. *See Cheek*, 31 F.3d at 501 (citing cases and noting that employers may discriminate on a particular basis in multiple ways so "a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."). Considering what is included on the face of the charge itself, Mathews' retaliation complaints relating to the investigation of her complaints are not within the scope of the second EEOC charge.

Mathews did discuss the disparate treatment her May and June complaints received, however, in the November 2003 and May 2004 letters she sent to the EEOC, and she argues this is enough because courts may consider "other written evidence" in addition to the allegations contained within the charge. *See, e.g., Cheek*, 31 F.3d at 502 ("Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations."). *See also* 29 C.F.R. § 1601.12(b)(2006) (allowing amendments to a charge that "clarify and amplify allegations made therein"). The cases she cites, however, are cases in which the additional written evidence was in the form of attachments to the charge or additional sworn affidavits sent to the EEOC. These papers may be considered as part of the "charge" because, like the charge itself, they are sworn, as required by Title VII. *See* 42 U.S.C.A. § 2000e-5(b) ("Charges shall be in

11

writing under oath or affirmation. . . .") . *See also Cheek*, 31
F.3d at 502 (allowing consideration of sworn affidavit); *Rush*, 966
F.2d at 1110-11 (considering affidavit); *Box v. A & P Tea Co.*, 772
F.2d 1372, 1375 (7th Cir. 1985) (considering handwritten addendum
to charge). The key issue in these cases, and others within the
Seventh Circuit, is not whether the additional information was
available to the employer such that it received notice of it. *See*
*Vela*, 218 F.3d at 665; *Novitsky* 196 F.3d 701, 702 (7th Cir. 1999).
Additional information forming part of the "charge" would be
investigated and the employer presumably would be notified of it;
subsequent letters to the EEOC containing additional allegations
which did not form part of the charge would not necessarily reach
the employer.

Mathews signed the original charge, which did not include the
additional type of retaliation she now alleges she suffered.
Although she clearly intended the EEOC to investigate this
additional allegation, she did not file a separate charge with the
EEOC, or ask the EEOC to amend the charge to add this new
allegation. Because there is no reasonable relationship between
this type of retaliation and the retaliation alleged in her charge,
and because it is not reasonable that this type of claim would grow

12

out of the EEOC investigation of the allegations in her charge, I cannot consider it here.[9]

Without these allegations, what Mathews is left with are her allegations that Kahn discriminated against her while Kahn served as her supervisor. Here too, Mathews' claims fall short. Mathews has no direct evidence that any actions Kahn took were retaliation for her prior claim.[10]  Therefore, she must proceed under the

---

[9]Mathews argues it is unfair to expect that she, as a pro se plaintiff who was not represented by counsel at the time she brought her EEOC charge, would understand how to make her charge in a way that would allow her to bring her current retaliation claims. While I sympathize with Ms. Mathews' current situation, the need for the employer to have notice is clear, and it is Ms. Mathews' responsibility, as the complainant, to make sure that the charges that she signed reflected all the discrimination she felt she had suffered. *See Novitsky,* 196 F.3d at 702-03 ("[W]hether or not the complainant had a lawyer, whether or not she sought or listened to counsel, indeed, whether or not she read or understood the charge, it was *her* charge, and it did not put her former employer on notice. . . ."). Judge Rovner's concurrence in *Novitsky* does suggest that there are circumstances in which equitable considerations might prompt a different result, particularly where the failure to include certain allegations results from EEOC negligence or misinformation. *Id.* at 703 (Rover, J., concurring). But here Mathews has shown no such circumstances.

[10]The only potential evidence Mathews might have that anyone at Columbia intended to retaliate against her is the note in the Equity Issues Office's report that Columbia's counsel instructed the Equity Issues Office not to talk to Mathews since her first charge was dismissed. Even taking this ambiguous comment in the light most favorable to Mathews, it only establishes that the counsel had some animus against Mathews (and might go to establishing her claim that her second charge was not investigated internally in retaliation for the filing of her first charge), but it does not establish that any of Kahn's actions were retaliatory.

13

*McDonnell-Douglas* burden-shifting analysis.[11] *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case under that analysis, Mathews must show 1) that she is a member of a protected class; 2) she was performing her job satisfactorily; 3) she suffered an adverse employment action; and 4) Columbia treated similarly-situated employees outside Mathews' class more favorably. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). If she can establish this is the case, then Columbia must provide a legitimate, non-discriminatory explanation for the actions Kahn took with respect to Mathews. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003). If Columbia can do so, then Mathews bears the burden of showing that the given reason was pretextual. *Id.*

---

[11]Mathews might argue that she can proceed under the direct method because, while she has no direct evidence that Kahn or anyone else at Columbia intended to retaliate against her, there exists a "'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Jordan v. City of Gary, Indiana*, 396 F.3d 825, 832 (7th Cir. 2005) (citing *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Such a mosaic may be shown by "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe*, 20 F.3d at 737. *See also Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). In this case, however, Mathews has shown none of these elements except one ambiguous statement and the timing of Kahn's actions. But Kahn was hired coincidentally at this time and there is no evidence that her hiring had anything to do with Mathews. The ambiguous statement is not enough to create a "convincing mosaic" such that Mathews could proceed under the direct method.

14

Here, Columbia argues that Mathews cannot meet the second, third or fourth prongs of the *McDonnell-Douglas* test. This is incorrect. First, while there is some evidence, primarily from Kahn's deposition, that Mathews had some interpersonal conflicts with other Columbia employees, taking this evidence in the light most favorable to Mathews it is not enough to suggest that she was not meeting Columbia's legitimate business expectations.

Additionally, Mathews can show that she suffered an adverse employment action. An adverse employment action requires a "significant change[] in employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, the adverse employment actions Mathews alleges she suffered include that she was excluded from meetings, had employees removed from her supervision, and had her grant reception goals changed. Mathews contends that she was excluded from a meeting concerning scholarships for Chicago Public Schools graduates, and a June 24, 2003 meeting with the Provost of Columbia concerning grant seeking. She acknowledges that when it became apparent she could have attended the scholarships meeting, she was issued a letter of apology. In May and June of 2003, Mathews contends that employees who were previously under her supervision were transferred to Kahn's supervision. Finally, Mathews admitted in her deposition that her fund-raising goals for 2003 were set by Dr. White prior to his departure, but argues that Kahn "harassed" her about the

15

percentage of those goals she had yet to met despite the fact that she had time remaining in the year in which to meet her objectives.

Although, as Columbia points out, these actions did not change the financial terms of Mathews' employment, this is not required. An adverse employment action may include an action which, although it does not change financial terms, "significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted." *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). In this case, preventing Mathews from attending planning and strategy meetings concerning grants and scholarship issues to which she otherwise would have been invited, and taking away her supervisory capacity so that she was no longer working in a managerial capacity, could constitute adverse actions.[12]

---

[12]Mathews also alleges that she suffered other retaliatory actions, including having a laptop taken away, having timeliness requirements imposed, and having her supervisor ask to see copies of her work. While she might be able to show that Kahn took these actions in retaliation for Mathews' first EEOC charge, they are not actionable under § 2000e-3(a) because they do not qualify as "material" discrimination. To be actionable, discrimination "entails a requirement that the employer's challenged action would have been material to a reasonable employee," and "[a]n employer's action is not material under § 2000e-3(a) if it would not have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005). A reasonable worker would not have made a discrimination charge based on these actions.

16

Mathews faces some difficulty in proving that similarly-situated employees outside her class were treated more favorably than she. Mathews does not address this prong in her briefings; she focuses on her investigation-related retaliation claims which I cannot consider. Columbia argues that Kahn's actions were not limited to Mathews; Kahn instituted changes which affected other employees (who had not filed EEOC charges) as well. Mathews does argue in other portions of her pleadings, however, that she alone had her supervisory capacity removed, she alone had her grant reception goals challenged, and she alone was excluded from meetings. There is evidence that she alone was improperly excluded from the two meetings at issue, and that she alone had employees removed from her supervision even though others in the department had employees under their supervision as well. Taking the facts in the light most favorable to Mathews, there is evidence that she alone was singled out for these actions (although other changes Kahn instituted did apply to other employees as well).

Having met the elements for the indirect method, Columbia must show a legitimate, non-retaliatory explanation for Kahn's behavior. *Ajayi*, 336 F.3d at 531. This Columbia has done. Columbia hired Kahn's consulting firm to improve its development operations, and Kahn took over as an interim vice-president as part of the firm's efforts. Columbia has presented evidence that the policies Kahn implemented were intended to improve the function and

professionalism of the office. Columbia has presented evidence that any exclusion of Mathews from meetings was inadvertent, and that Kahn removed employees from Mathews' supervision in an effort to streamline reporting and responsibilities within the office. Finally, Columbia has presented evidence that any pressure Kahn placed on Mathews concerning her grant reception requirements were, even if misguided, an effort to keep up with Columbia's grant-reception progress and were not intended to place unfair pressure on Mathews or to create the perception that she was not meeting her goals.

Given this showing, it is Mathews' burden to show that those reasons were pretextual--that is, that the real reason that Kahn took the actions she did was to retaliate against Mathews. *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) ("Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.'") (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)). Given the facts of this case, this is a difficult burden for her to prove. In the first place, Kahn testified that she did not know of the first EEOC charge Mathews made.[13] Mathews testified that she believed Kahn knew of the charge because she saw a personnel file in the office

---

[13]During her deposition, Kahn testified that she never saw any personnel files during the entire time she worked at Columbia, and she was not aware Mathews had filed any charges with the EEOC until after she left Columbia.

18

that contained a reference to the charge that she assumed belonged
to Kahn.[14] Also, other Columbia personnel such as the president,
counsel, and those in the Equity Issues Office did know of the
charge, and Mathews suggests that they may have told Kahn.[15] Taking
the facts in the light most favorable to the plaintiff, it could be
inferred that Kahn and others knew of the charge. But even
assuming they knew, Mathews has presented no evidence that
Columbia's stated reasons for treating Mathews as it did are false.
Mathews' argument essentially is, "Columbia knew I filed the first
charge, and subsequent adverse actions were taken against me,
therefore those actions *must* have been in retaliation for my
charge." Mathews has presented no evidence from which a trier of

---

[14]Some of the propositions Columbia cites in its brief as
supported by Mathews' deposition are incorrect. For example,
Columbia states that Mathews admitted that it was not retaliatory
for Kahn to realign the department, but in the pages Columbia cites
Mathews only states that it is not improper for a hypothetical
supervisor to realign reporting functions; she does not admit that
it was non-retaliatory for Kahn to realign the department as she
did (and indeed whether something is retaliatory for purposes of
Title VII is a legal question that Mathews is not qualified to
answer).

[15]Mathews also argues in her pleadings that, while she only
alleges that Kahn specifically took actions against her, Kahn may
have been acting on the direction of higher officials at Columbia
who took issue with her first EEOC charge and wished to retaliate
against her. Columbia argues that any complaints against anyone
but Kahn fail to satisfy the administrative requirements of a Title
VII claim because Mathews only identified Kahn in her second EEOC
charge. However, it is a reasonable outgrowth of an EEOC charge
against one lower-level supervisory employee for an employer to be
on notice that those actions might have been taken at the direction
of another, so this does not create a notice problem such that I
should not consider that argument now. *See Vela*, 218 F.3d at 664.

19

fact could infer that this was the case.[16]  In order to demonstrate a material issue of fact as to pretext in order to survive summary judgment, Mathews must show that either 1) Columbia lied about the true reason for its actions against Mathews or 2) Columbia's explanation lacks credibility. *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001).  Here, Mathews has shown neither.  There is no evidence here from which a factfinder could reasonably conclude that Kahn acted as she did for any reason other than to improve Columbia's development program, even if she was misguided.  Aside from contesting the explanation as untrue, Mathews has presented no evidence to suggest that Columbia lacks credibility other than a defendant's typical interest in avoiding liability.  As the Seventh Circuit has said,

> Even where the plaintiff establishes all of the required elements to make out a prima facie case, if the employer presents unrebutted evidence of a non-invidious reason for the employment action at issue, the employer is entitled to summary judgment unless there is a material issue of fact as to whether the employer's non-invidious reason is pretext for retaliation.

*Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004) (citing *Stone v. Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)).  For these reasons, I have no choice but to grant Columbia's motion for summary judgment.[17]

---

[16]For this same reason, Mathews' arguments that Columbia retaliated against her by not investigating her May and June complaints would have difficulty surviving summary judgment, though I do not consider that claim for the reasons discussed above.

[17]Columbia also filed a motion to strike Mathews' responses to its Local Rule 56.1 statement and portions of Mathews' Local Rule 56.1 statement.  As I am granting defendant's motion for summary

20

**ENTER ORDER:**

_Elaine E. Bucklo_

_____

**Elaine E. Bucklo**
United States District Judge

Dated:   June 21, 2006